# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| MELANIE O.,[1] | : | Case No. 1:22-cv-00592 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in April 2020. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a disability as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

I.    **BACKGROUND**

Plaintiff asserts that she has been under a disability since February 21, 2017. At that time, she was fifty-nine years old. Accordingly, Plaintiff was a "person of advanced age" under the Social Security regulations. 20 C.F.R. § 404.1563(e). She turned sixty years old prior to the issuance of the ALJ's decision and changed age category to "closely approaching retirement age." 20 C.F.R. §§ 404.1563(e); 404.1568(d)(4). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-2 at PageID 30-50), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10), Plaintiff's Supplemental Statement of Errors ("SSE," Doc. No. 13), and Defendant's Response to Plaintiff's Supplemental Statement of Errors ("Response," Doc. No. 14). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

II.    **STANDARD OF REVIEW**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III. FACTS

#### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since February 21, 2017, the alleged onset date.

Step 2: She has the severe impairments of disorders of the spine status post fusion of the cervical spine and lumbar spine, disorders of the left shoulder status post remote surgery, osteoarthritis of the knees and feet, chronic pain syndrome, fibromyalgia, and obesity.

4

> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: "[S]he can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can frequently reach overhead with the non-dominant left upper extremity. She must avoid all exposure to unprotected heights and hazardous machinery. She can have no concentrated exposure to extreme cold."
>
> Plaintiff is capable of performing her past relevant work as a case manager, but only as Plaintiff actually performed the job.

(Decision, Doc. No. 6-2 at PageID 36-46.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 46.)

### B. Plaintiff's Left Shoulder Impairments

#### 1. Subjective complaints

Plaintiff alleged disability in part due to left shoulder pain and weakness. (*E.g.,* AR, Doc. No. 6-2 at PageID 62-63; AR, Doc. No. 6-6 at PageID 204, 214.) She described difficulty reaching up, out, and to the side of her body. (AR, Doc. No. 6-2 at PageID 63.) Plaintiff had prior neck and left shoulder surgeries, and was diagnosed with fibromyalgia. (AR, Doc. No. 6-2 at PageID 62-65; AR, Doc. No. 6-6 at PageID 204.) She had difficulty with daily activities such as showering and dressing. (AR, Doc. No. 6-6 at PageID 220.) She also had difficulty sleeping at night, due to pain and discomfort. (*Id.* at PageID 220-21; AR, Doc. No. 6-2 at PageID 63.) Plaintiff had difficulty with reaching items in her

kitchen, as well as with writing, typing, and picking up or manipulating small objects, due to hand pain and cramping. (AR, Doc. No. 6-2 at PageID 64; (AR, Doc. No. 6-6 at PageID 221.) Overall, her pain varied from a three to four out of ten (with ten being the worst pain) to a ten out of ten. (AR, Doc. No. 6-2 at PageID 65.)

### 2. Provider medical records

In May 2017, Plaintiff complained of progressive left shoulder pain and limited range of motion. (AR, Doc. No. 6-7 at PageID 592.) Six years earlier, she had undergone surgery to repair a superior labrum anterior and posterior (SLAP) tear in the area where the biceps tendon attaches to the shoulder. (*Id.*) Plaintiff complained of decreased range of motion, swelling, and pain with forward flexion, reaching, overhead motions, and "any type of weightbearing." She also reported finger numbness. (*Id.*)

A physical examination revealed limited range of motion during extension, lateral side bend, and rotation, as well as positive Neer and Hawkins signs and empty can testing. (*Id.*) Grip strength was equal bilaterally, and sensation was intact. (*Id.*) A left shoulder MRI found moderate glenohumeral osteoarthritis, mild glenohumeral capsulitis, low-grade undersurface fraying of the supraspinatus and infraspinatus tendons with associated mild tendinosis, and mild to moderate acromioclavicular joint osteoarthritis. (*Id.* at PageID 596-97.) Orthopedist Peter Cha, M.D. recommended injections and physical therapy. (*Id.* at PageID 598.)

Plaintiff began physical therapy on May 10, 2017. (AR, Doc. No. 6-7 at PageID 599-600.) After the ninth session, physical therapist Daniel Bolger, M.P.T. documented improved—yet still decreased—range of motion and strength of the left shoulder. (*Id.* at

6

PageID 608.) Plaintiff reported reduced pain which averaged a two to three out of ten. (*Id.*) Mr. Bolger discharged Plaintiff with instructions to continue home exercises. (*Id.*) Nevertheless, Mr. Bolger indicated that activities such as computer use, driving, lifting more than eleven pounds, reaching behind Plaintiff's back, bathing and dressing could not be performed by Plaintiff "without compensation." (*Id.* at PageID 608-09.)

In June 2017, shortly after Plaintiff completed physical therapy, Dr. Cha conducted a physical examination that showed "near full passive range of motion" and improving strength in the left shoulder. (AR, Doc. No. 6-7 at PageID 610.)

In October 2017, Dr. Cha reported that a physical examination revealed decreased range of motion: "forward elevation 160, abduction 90, external rotation 60/80." (*Id.* at PageID 623.) Dr. Cha also documented positive Neer and Hawkins signs. (*Id.*) Additionally, Dr. Cha noted that Plaintiff was starting to experience cervical radicular-like symptoms. (*Id.*) Although he recommended a cervical MRI, it does not appear that Plaintiff had a cervical MRI at that time.

In October 2018, Plaintiff returned to Dr. Cha with complaints of left-sided shoulder weakness. The examination again showed reduced range of motion, pain upon external rotation, and weakness. (AR, Doc. No. 6-7 at PageID 633.) Dr. Cha's impression was "[l]eft shoulder referred radiculopathy pain with glenohumeral [osteoarthritis] and residual impingement." (*Id.*)

The medical records show no further significant upper extremity complaints or treatment until October 2020, when Plaintiff complained to Dr. Cha of continued left shoulder pain, including pain with overhead activities. (AR, Doc. No. 6-7 at PageID 674.)

7

She stated that she could not do any lifting "for the most part" using the left shoulder. (*Id.*) Dr. Cha reported that the examination showed decreased range of motion, as well as positive Neer and Hawkins signs, and he suggested additional physical therapy. (*Id.*)

In November 2020, Plaintiff presented to Tammy Musolino, M.D. for complaints of pain "all over" her body. (AR, Doc. No. 6-8 at PageID 1041.) Specifically, Plaintiff complained of numbness and tingling in the arms. (*Id.*) Upon physical examination, Plaintiff exhibited tenderness over the acromioclavicular joint and subacromial bursa on the left side. (*Id.* at PageID 1045.) Dr. Musolino documented no redness or warmth, but the examination was positive for pain on Neer and Hawkins tests. (*Id.* at PageID 1045-46.) Shoulder impingement was greater on the left side. (*Id.* at PageID 1046.) Range of motion was also decreased on the left side. (*Id.*)

A December 2020 examination by Dr. Musolino again showed arthritic changes with limited range of motion of the left shoulder. (*Id.* at PageID 1060.)

Upon referral by Dr. Musolino, Plaintiff saw rheumatologist John Beary, M.D. in January 2021. (AR, Doc. No. 6-7 at PageID 693.) Dr. Beary reported that his examination showed touchdown signs and decreased range of motion, which was worse in the left shoulder. (*Id.* at PageID 697.) Dr. Beary found no evidence of rheumatoid arthritis and suspected fibromyalgia. (*Id.*)

Examinations performed by Dr. Musolino in January and February 2021 continued to show arthritic changes with limited left shoulder range of motion. (AR, Doc. No. 6-8 at PageID 1074, 1091.)

When Plaintiff presented to rheumatologist Jennifer Lobert, M.D. in late February 2021, Plaintiff complained of arm weakness, "frequent[,] sudden jerking" in her arms, and difficulty with dropping things. (AR, Doc. No. 6-7 at PageID 768.) Dr. Lobert did not document any significant examination abnormalities in her records that are dated through July 2021. (*Id*. at PageID 768, 733, 782-83; AR, Doc. No. 6-8 at PageID 1179.)

### 3. State agency consultant Elizabeth Das, M.D.

On August 13, 2020, state agency consultant Elizabeth Das, M.D. issued an initial determination on Plaintiff's disability claim. (AR, Doc. No. 6-3 at PageID 79-82.) Dr. Das considered Plaintiff's subjective complaints of pain, loss of sensation and weakness, along with various objective examination findings. (*Id*. at PageID 80.) She concluded that Plaintiff "would be limited to occasional reaching overhead [due to left] shoulder outlet impingement, [left] shoulder glenohumeral joint [with] [l]imited [range of motion] in extension and lateral side bend and rotation." (*Id*. at PageID 81.) Dr. Das also concluded that Plaintiff was not limited in her ability to reach in front and/or laterally. (*Id*.)

### 4. The ALJ's discussion of Plaintiff's left shoulder impairments

In the Decision, the ALJ discussed the objective medical evidence and Plaintiff's statements about her impairments in disability reports and during the hearing. (Doc. No. 6-2 at PageID 39-40.) The ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause some of her symptoms, the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Decision, Doc. No. 6-2 at PageID 40.) The ALJ

9

also concluded that the "objective medical evidence of record is inconsistent with [Plaintiff's] subjective allegations of pain and limitation." (*Id.*)

With regard to Plaintiff's left shoulder complaints, the ALJ summarized the examination findings between May 2017 and August 2017. (Decision, Doc. No. 6-2 at PageID 43-44.) The ALJ highlighted the lengthy gap in treatment for Plaintiff's left shoulder and summarized the examination findings after that time:

> There appears to be a treatment gap of approximately 3 years[2] until October 2020, at which time [Plaintiff] presented with left shoulder pain (Id. at 87). She was diagnosed with left shoulder impingement with pain and new onset of weakness; physical therapy was recommended (Id.). For a few months, physical examinations showed some abnormalities in the left shoulder (7F), but by February 23, 2021, physical examination did not show any abnormalities in her left shoulder (7F/7, 14F).

(*Id.* at PageID 44.)

After reviewing the evidence in the record, the ALJ concluded that Plaintiff could perform sedentary work with restrictions, including frequent (not occasional) overhead reaching with her left shoulder. (Decision, Doc. No. 6-2 at PageID 44.) The ALJ acknowledged that state agency consultant Elizabeth Das, M.D. had opined that Plaintiff was capable of light work with occasional overhead reaching with the left upper extremity. (*Id.* at PageID 45.) The ALJ justified the change from occasional to frequent by noting that Plaintiff's "treatment has been intermittent with physical examinations not showing ongoing abnormalities in her left shoulder." (*Id.*) Notably, the ALJ considered evidence that post-dated August 2020 and therefore was not available to Dr. Das.

---

[2] This statement is incorrect, since Dr. Cha examined Plaintiff's left shoulder in October 2018. (AR, Doc. No. 6-7 at PageID 633.) The actual treatment gap was therefore approximately two years, not three years. Because this error does not have a material impact on the ALJ's reasoning, the Court will not further consider the error in its analysis.

10

## IV. THE ALJ'S RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff asserts that the ALJ erred by failing to "apply a proper [RFC] and subsequently fail[ing] to apply the appropriate Medical-Vocational Guideline for [Plaintiff's] age, education, background, and work history." (SE, Doc. No. 9 at PageID 1205.) Specifically, Plaintiff contends that the ALJ erred by including a limitation in the RFC for "frequent" overhead reaching with the non-dominant upper extremity, when she should have been limited to "occasional" overhead reaching. (*Id*. at PageID 1206.) Plaintiff also asserts that the ALJ erred by not restricting Plaintiff to occasional lateral reaching with the non-dominant (left) upper extremity. (SSE, Doc. No. 12 at PageID 1225-26.) Because these assertions are not well-taken, the Court shall affirm the Commissioner's decision.

Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion evidence when determining the RFC, but she is not required to adopt them or adopt any such findings verbatim. *Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). In addition, "[t]he determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

Plaintiff argues that the portion of the ALJ's RFC that limits her to frequent (rather than occasional) overhead and lateral reaching is unsupported by substantial evidence. (SE, Doc. No. 9 at PageID 1205; SSE, Doc. No. 12 at PageID 1225-26.) The substantial evidence standard precludes this Court from re-weighing the evidence and deciding whether the preponderance of the evidence supports a different conclusion. *Biestek*, 139 S. Ct. at 1154 (2019). Instead, this Court is limited to determining whether the ALJ's findings are supported by substantial evidence, which "means only . . . 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*.

The Court finds that the ALJ's RFC is supported by substantial evidence. As the ALJ noted, Plaintiff's left shoulder improved after physical therapy, there was a lengthy treatment gap, and Plaintiff's later examinations did not show abnormal findings relating to her left shoulder. This evidence is relevant and "a reasonable mind might accept [it] as

12

adequate to support [the ALJ's] conclusion." *Biestek*, 139 S. Ct. at 1154. Moreover, not only was the ALJ permitted to disagree with Dr. Das's restrictions, but her disagreement was reasonable given that Dr. Das's opinion pre-dated and so did not account for the later examination findings.

Thus, even if evidence in the record (e.g., Plaintiff's subjective complaints) would support the opposite conclusion, the Court finds that substantial evidence supports the ALJ's RFC limitation for frequent overhead reaching with the non-dominant upper extremity. And, as Defendant points out, no evidence in the record supports a limitation on Plaintiff's ability to reach laterally. Therefore, the ALJ did not err in assessing the RFC and the Commissioner's decision must be affirmed.

## VI.   CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal framework and substantial evidence supports her conclusions. Accordingly, Plaintiff's Statement of Errors and Supplemental Statement of Errors lack merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 9) and Supplemental Statement of Errors (Doc. No. 12) are OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

13